UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | LEAD CASE No. 22-50591-CAG |
| CHRIS PETTIT & ASSOCIATES, P.C. | § | |
| CHRISTOPHER JOHN PETTIT | § | SECOND CASE No. 22-50592-CAG |
| | § | |
| Jointly Administered Debtors | § | Chapter 11 |
| | § | Jointly Administered Under |
| | § | Case No. 22-50591 |

| | | |
|---|---|---|
| ERIC TERRY, in his capacity as CHAPTER | § | |
| 11 TRUSTEE for DEBTORS, | § | |
|     Plaintiff, | § | |
| | § | Adversary No. 24-05031-CAG |
| v. | § | |
| | § | |
| TEXAS PARTNERS BANK d/b/a THE | § | |
| BANK OF SAN ANTONIO and | § | |
| CHRISTOPHER JOHN PETTIT, | § | |
| INDIVIDUALLY, | § | |
|     Defendants. | § | |

**DEFENDANT TEXAS PARTNERS BANK D/B/A THE BANK OF SAN ANTONIO'S
MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Respectfully submitted,

By: */s/ Randall C. Owens*
    Randall C. Owens
    State Bar No. 15380700
    Jake Kauffman
    State Bar No. 24080594
    WRIGHT CLOSE & BARGER, LLP
    One Riverway, Suite 2200
    Houston, Texas  77056
    (713) 572-4321
    (713) 572-4320 facsimile

owens@wrightclosebarger.com
kauffman@wrightclosebarger.com

**ATTORNEYS FOR DEFENDANT**
**TEXAS PARTNERS BANK D/B/A**
**THE BANK OF SAN ANTONIO**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on the 22nd day of July 2024, a copy of the foregoing was electronically filed and served to all parties by operation of the Court's CM/ECF e-filing system.

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................iii

TABLE OF AUTHORITIES ..........................................................................................iv

INTRODUCTION ...........................................................................................................1

STANDARD OF REVIEW ..............................................................................................2

ARGUMENT AND AUTHORITIES ..............................................................................4

   I.   The Common Law Claims Must Be Dismissed ......................................................4

   A.   The Common Law Claims Must Be Dismissed for Lack of Standing................4

   B.   The Common Law Claims Are Barred by the Law of the Case Doctrine .........8

   C.   The UCC Applies to Preempt and Preclude the Trustee's Common Law
      Claims .......................................................................................................................11

   i.   The Common Law Claims Are Displaced or Preempted by the UCC .............11

   ii.   The Common Law Claims Are Barred Because the Alleged Improper Banking
       Transactions Were Not Timely Reported .......................................................12

   D.   The Account Agreement Bars the Trustee's Claims..........................................15

   E.   The Common Law Claims Are Barred by the Economic Loss Rule ...............16

   F.   The Common Law Claims Are Precluded by the Principle of *in pari delicto*..18

   G.   The Common Law Claims Must Be Dismissed for Failure to State a Claim ..19

   i.   The Knowing Participation in Breach of Fiduciary Duty Claim Must Be
      Dismissed ...........................................................................................................19

   ii.   The Knowing Participation in Perpetration of Fraud Claim Must Be
       Dismissed ...........................................................................................................27

   iii.   The Claims for Negligence and Gross Negligence Must Be Dismissed ...........33

   II.   The Fraudulent Transfer Claims Must Be Dismissed .......................................36

   A.   Trustee Fails to Plead that Transfers Involved Debtor Property....................36

   B.   Trustee Fails to Allege Facts to Support Insolvency.........................................38

   C.   Trustee Fails to Plead Facts Showing Lack of Reasonably Equivalent Value 39

CONCLUSION .............................................................................................................40

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abry v. Vanguard Grp. Inc.*,
  No. 4:20-CV-02756, 2021 WL 6197304 (S.D. Tex. Dec. 31, 2021) ...................................... 34

*Aguilar v. PNC Bank, N.A.*,
  853 F.3d 390 (8th Cir. 2017) .............................................................................................. 22, 25

*Am. Airlines Emps. Fed. Credit Union v Martin*,
  29 S.W.3d 86 (Tex. 2000) .................................................................................................... 12, 13

*Ardoin v. Anheuser-Busch, Inc.*,
  267 S.W.3d 498 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ......................................... 35

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 2, 3, 40

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... passim

*Berman v. Morgan Keegan & Co.*,
  455 F. App'x 92 (2d Cir. 2012) .................................................................................... 25, 26, 28

*Blackburn v. City of Marshall*,
  42 F.3d 925 (5th Cir. 1995) ..................................................................................................... 3

*Bordeau Bros., Inc. v. Montagne (In re Montagne)*,
  No. 08-1024, 2010 WL 271347, (Bankr. D. Vt. Jan. 22, 2010) .......................................... 9, 10

*Cadence Bank v. Elizondo*,
  606 S.W.3d 802 (Tex. App.—Houston [1st Dist.] 2020)....................................................... 11

*Cadence Bank, N.A. v. Elizondo*,
  642 S.W.3d 530 (Tex. 2022) ................................................................................................... 11

*Canfield v. Bank One, Tex., N.A.*,
  51 S.W.3d 828 (Tex. App.—Texarkana 2001, pet. denied).................................................... 14

*Caplin v. Marine Midland Grace Tr. Co. of N.Y.*,
  406 U.S. 416 (1972) ............................................................................................................. 5, 6

*CBIF Ltd. P'ship v. TGI Friday's Inc.*,
  No. 05-15-00157-CV, 2017 WL 1455407 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) .. 20,
  23

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) ................................................................................................................ 8

*Cohen v. Bucci*,
  905 F.2d 1111 (7th Cir.1990).................................................................................................. 8, 9

*Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*,
  271 S.W.3d 238 (Tex. 2008) .............................................................................................. 34, 35

*Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
 322 F.3d 147 (2d Cir. 2003) ........................................................................... 18

*Compass Bank v. Calleja-Ahedo*,
 569 S.W.3d 104 (Tex. 2018) .......................................................................... 13

*Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*,
 462 S.W.3d 128 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ............................ 11

*Corpus Christi Area Teachers Credit Union v. Hernandez*,
 814 S.W.2d 195 (Tex. App.—San Antonio 1991, no writ)........................... 27, 29, 30

*Diamond Shamrock Ref. Co. v. Hall*,
 168 S.W.3d 164 (Tex. 2005) .......................................................................... 35

*Doctors Hosp. of Hyde Park*,
 474 F.3d 421 (7th Cir. 2007)............................................................................ 7

*Dorsey v. Portfolio Equities, Inc.*,
 540 F.3d 333 (5th Cir. 2008) ........................................................................... 3

*Eisenberg v. Wachovia Bank*,
 301 F.3d 220 (4th Cir. 2002)......................................................................... 28

*Fernandez-Montes v. Allied Pilots Ass'n*,
 987 F.2d 278 (5th Cir. 1993) ........................................................................... 3

*First United Pentecostal Church of Beaumont v. Parker*,
 514 S.W.3d 214 (Tex. 2017) .......................................................................... 19

*Five Star Transfer & Terminal Warehouse Corp. v. Flusche*,
 339 S.W.2d 384 (Tex. App.—Texarkana 1960, writ ref'd n.r.e.)...................... 27, 29

*Floyd v. CIBC World Mkts., Inc.*,
 426 B.R. 622 (S.D. Tex. 2009)....................................................................... 18

*Franklin D. Azar & Assocs., P.C. v. Bryant*,
 No. 4:17-CV-00418, 2019 WL 5390172 (E.D. Tex. July 30, 2019)........................ 20

*Frost Nat'l Bank v. Heafner*,
 12 S.W.3d 104 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ...................... 17

*Game Sys., Inc. v Forbes Hutton Leasing, Inc*.,
 No. 09-cv-00051, 2011 WL 2119672 (Tex. App.—Fort Worth May 26, 2011, no pet.) .......... 7

*Groom v. Bank of Am.*,
 No. 8:08-CV-2S67-JDW-EAJ, 2012 WL 50250 (M.D. Fla. Jan. 9, 2012)...................... 22, 24

*Hatcher Cleaning Co. v. Comerica Bank-Tex.*,
 995 S.W.2d 933 (Tex. App.—Fort Worth 1999, no pet.) ................................... 13, 14

*Henderson v. Wells Fargo Bank, N.A.*,
 974 F. Supp. 2d 993 (N.D. Tex. 2013)............................................................. 17

*In re 1031 Tax Grp., LLC*,
 420 B.R. 178 (Bankr. S.D.N.Y. 2009) ............................................................... 6

*In re Agape Litig.*,
   773 F. Supp. 2d 298 (E.D.N.Y. 2011).................................................................................. 22

*In re Arthur Andersen LLP*,
   121 S.W.3d 471 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ................................... 29, 30

*In re Bernard L. Madoff Inv. Secs. LLC*,
   721 F.3d 54 (2d Cir. 2013)........................................................................................... 5, 19

*In re Buccaneer Res., L.L.C.*,
   912 F.3d 291 (5th Cir. 2019)............................................................................................... 5

*In re Chris Pettit & Assocs., P.C.*,
   No. 22-50591-CAG, 2022 WL 17722853 (Bankr. W.D. Tex. Dec. 13, 2022)........................ 39

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
   888 F.3d 753 (5th Cir. 2018)............................................................................................. 19

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   511 F. Supp. 2d 742 (S.D. Tex. 2005) ................................................................................. 6

*In re Griddy Energy LLC*,
   No. 21-30923, 2022 WL 6795069 (Bankr. S.D. Tex. Oct. 6, 2022)....................................... 37

*In re Gulf Fleet Holdings, Inc.*,
   491 B.R. 747 (Bankr. W.D. La. 2013) ............................................................................... 40

*In re Hoffman*,
   955 F.3d 440 (5th Cir. 2020)............................................................................................. 37

*In re Jenkins*,
   617 B.R. 91 (Bankr. N.D. Tex. 2020) ................................................................................ 37

*In re Jones*,
   No. 16-41283-ELM-7, 2019 WL 1167812 (Bankr. N.D. Tex. Mar. 11, 2019) ...................... 39

*In re Philip Servs. Corp.*,
   359 B.R. 616 (Bankr. S.D. Tex. 2006)............................................................................ 38, 39

*In re Pilgrim's Pride Corp.*,
   442 B.R. 522 (Bankr. N.D. Tex. 2010) .............................................................................. 8, 9

*In re Sunpoint Secs., Inc.*,
   377 B.R. 513 (Bankr. E.D. Tex. 2007)................................................................................. 7

*In re Superior Air Parts, Inc.*,
   486 B.R. 728 (Bankr. N.D. Tex. 2012) .............................................................................. 21

*In re Today's Destiny, Inc.*,
   388 B.R. 737 (Bankr. S.D. Tex. 2008) ............................................................................... 18

*In re Tufts Elecs., Inc.*,
   746 F.2d 915 (1st Cir. 1984) .............................................................................................. 7

*In re Viola*,
   469 B.R. 1 (B.A.P. 9th Cir. 2012)....................................................................................... 6

*In re Viola*,
   583 F. App'x 669 (9th Cir. 2014) ............................................................. 6

*Joseph v. Bach & Wasserman, L.L.C.*,
   487 F. App'x 173 (5th Cir. 2012) ............................................................. 4

*JSC Neftegas-Impex v. Citibank, N.A.*,
   365 S.W. 3d 387 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ................... 20

*Latitude Sols., Inc. v. DeJoria*,
   922 F.3d 690 (5th Cir. 2019) .................................................................. 6

*Legendary Lightning Grp., Inc. v. Optigenex, Inc.*,
   No. 4:15-cv-LG-CMC, 2015 WL 3942946 (E.D. Tex. June 26, 2015) ............ 4, 21, 31, 32

*Litson-Gruenber v. JPMorgan Chase & Co.*,
   No. 7:09-CV-056, 2009 WL 4884426 (N.D. Tex. Dec. 16, 2009) ........................ 20

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) .................................................................. 3

*Lovelace v. Software Spectrum Inc.*,
   78 F.3d 1015 (5th Cir. 1996) .................................................................. 3

*Magee v. Reed*,
   912 F.3d 820 (5th Cir. 2019) .................................................................. 3

*Matter of La. Pellets, Inc.*,
   838 F. App'x. 45 (5th Cir. 2020) ............................................................. 40

*Mercedes-Benz USA, LLC v. Carduco, Inc.*,
   583 S.W.3d 553 (Tex. 2019) .................................................................. 7

*Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*,
   800 F. App'x. 239 (5th Cir. 2020) .................................................... 11, 17, 19

*Moody Nat'l Bank v. Tex. City Dev. Ltd. Co.*,
   46 S.W.3d 373 (Tex.App.–Houston [1st Dist.] 2001, pet. denied) ..................... 11

*Morrow v. Bank of Am., N.A.*,
   No. 5:12-CV-00782-OLG, 2013 WL 12131235 (W.D. Tex. June 10, 2013) ............. 3

*Nathel v. Siegal*,
   592 F. Supp. 2d 452 (S.D.N.Y. 2008) ...................................................... 24

*Norris v. Hearst Tr.*,
   500 F.3d 454 (5th Cir. 2007) .................................................................. 3

*Olmos v. David B. Giles P.C.*,
   No. 3:22-CV-0077-D, 2022 WL 1289556 (N.D. Tex. Apr. 28, 2022) ..................... 22

*Oracle Elevator Holdco, Inc. v. Exodus Sols, LLC*,
   No. 4:19-cv-4658, 2021 WL 4077581 (S.D. Tex. Sept. 8, 2021) ........................ 7

*Owens v. Comerica Bank*,
   229 S.W.3d 544 (Tex. App.—Dallas 2007, no pet.) ................................... 33, 34

*Paskenta Band of Nomlaki Indians v. Umpqua Bank*,
   846 F. App'x 589 (9th Cir. 2021) .......................................................................... 24

*Perlman v. Wells Fargo Bank, N.A.*,
   559 F. App'x 988 (11th Cir. 2014) ......................................................................... 24

*Pierce v. Fort*,
   60 Tex. 464 (1883) ....................................................................................... 27, 28

*Red Rock v. Jafco, Ltd.*,
   79 F.3d 1146, 1996 WL 97549 (5th Cir.1996) ....................................................... 34

*Reeder v. Wood Cnty. Energy, LLC*,
   395 S.W.3d 789 (Tex. 2012) .................................................................................. 35

*Rosemann v. St. Louis Bank*,
   858 F.3d 488 (8th Cir. 2017) ................................................................................. 25

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ................................................................................. 32

*Scott v. Steinhagen Oil Co., Inc.*,
   224 F. Supp. 2d 1084 (E.D. Tex. 2002) .................................................................. 3

*Segner v. Sinclair Oil & Gas Co.*,
   No. 3-11-CV-03606-F, 2012 WL 12885055 (N.D. Tex. June 4, 2012) ...................... 6

*Seven Seas Petroleum, Inc. v. CIBC Mkts. Corp.*,
   No. 08-3048, 2013 WL 3803966 (S.D. Tex. July 19, 2023) ................................... 18

*Shindler v. Mid-Continent Life Ins. Co.*,
   768 S.W.2d 331 (Tex. App.—Houston [14th Dist.] 1989, no writ) ......................... 32

*Sterling Chems., Inc. v. Texaco Inc.*,
   259 S.W.3d 793 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ..................... 16

*Straehla v. AL Glob. Servs., LLC*,
   619 S.W.3d 795 (Tex. App.—San Antonio 2020, pet. denied) .............................. 20

*Strobach v. WesTex Cmty. Credit Union*,
   621 S.W.3d 856 (Tex. App.—El Paso 2021, pet. denied) ..................................... 16

*Sutton v. Grogan Supply Co., Lumber Div.*,
   477 S.W.2d 930 (Tex. Civ. App.—Texarkana 1972, no writ) ................................ 32

*Taya Agric. Feed Mill Co. v. Byishimo*,
   No. CV H-21-3088, 2022 WL 103557 (S.D. Tex. Jan. 11, 2022) ........................... 34

*Tuchman v. DSC Commc'ns Corp.*,
   14 F.3d 1061 (5th Cir. 1994) ................................................................................. 32

*U.S. ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir.2009) ............................................................................. 4, 31

*U-Haul Int'l, Inc. v. Waldrip*,
   380 S.W.3d 118 (Tex. 2012) .................................................................................. 35

viii

*Vines v. City of Dallas, Texas*,
  851 F. Supp. 254 (N.D. Tex. 1994) ................................................................................ 3

*Walker v. Pasteur (In re Aphton Corp.)*,
  423 B.R. 76 (Bankr. D. Del. 2010) ............................................................................... 40

*Wal-Mart Stores, Inc. v. Alexander*,
  868 S.W.2d 322 (Tex. 1993) ......................................................................................... 35

*Zayed v. Associated Bank, N.A.*,
  913 F.3d 709 (8th Cir. 2019) ......................................................................................... 24

Statutes

11 U.S.C. § 541 ................................................................................................................. 36
11 U.S.C. § 547 ................................................................................................................. 36
11 U.S.C. § 548 .................................................................................................... 35, 36, 38
11 U.S.C. § 550 ................................................................................................................. 35
Tex. Bus. & Com. Code § 1.103 ...................................................................................... 11
Tex. Bus. & Com. Code § 4A.102 ................................................................................... 11
Tex. Bus. & Com. Code § 4.101 ...................................................................................... 10
Tex. Bus. & Com. Code § 4.103 ...................................................................................... 11
Tex. Bus. & Com. Code § 4.401 ...................................................................................... 13
Tex. Bus. & Com. Code § 4.406 ........................................................................... 11, 12, 14
Tex. Bus. & Com. Code § 24.005 .................................................................................... 35
Tex. Bus. & Com. Code § 24.013 .................................................................................... 35
Tex. Bus. & Com. Code § 24.006 .................................................................................... 35
Tex. Civ. Prac. & Rem. Code § 41.001 ........................................................................... 33

Rules

Fed. R. Civ. P. 12 .................................................................................................... i, 1, 2, 3
Fed. R. Civ. P. 9 ......................................................................................................... 2, 3

## INTRODUCTION

1.     This Adversary Proceeding was filed against Defendant Texas Partners Bank d/b/a The Bank of San Antonio (the "Bank") by Eric Terry in his capacity as Chapter 11 Trustee for the estate of debtors Christopher John Pettit and his former law firm, Chris Pettit & Associates, P.C. ("Pettit" and "CP&A," respectively, "Debtors" collectively).[1] The Trustee readily concedes that Pettit is guilty of illegal conduct and, in an attempt to create a basis to bring claims against the Bank, purports to bring common law claims on behalf of both CP&A and Pettit. However, there is no real distinction between Pettit and CP&A, and the claims arise out of their scheme to defraud CP&A's clients and other beneficiaries of various trust accounts opened by Pettit and CP&A, including IOLTA and 1031 Exchange accounts at the Bank (the "CP&A Clients"). Neither Pettit nor CP&A have a basis to bring claims against the Bank. The Trustee has not pleaded and cannot establish (i) a basis to bring claims for damages suffered by the CP&A Clients or (ii) whether the account funds belonged to Pettit or CP&A, rather than the CP&A Clients.

2.     The Court should dismiss all of the common law claims for lack of standing under Rule 12(b)(1). The Trustee has asserted common law claims not only against the Bank, but also against other banks in separate adversary proceedings.[2] However, the Trustee lacks standing to pursue those claims on behalf of the individual clients—the people allegedly harmed by Pettit's conduct. Many of those individuals are actively asserting the same common law claims in parallel litigation against the Debtors' banks.[3] Conversely, neither the Debtors nor the estate were directly

---

[1] "All causes of action in [the] Complaint[] are asserted by the Trustee in his capacity as Chapter 11 Trustee for the Estate of Chris Pettit & Associates, P.C. In his capacity as Chapter 11 Trustee for the Estate of Christopher John Pettit, the Trustee asserts only the fraudulent transfer claims." Complaint at 1 n.1.

[2] *See Verstuyft, et al. v. Wells Fargo Bank, N.A. et al.*, Adversary No. 23-05039-cag; *Eric Terry in his capacity as Chapter 11 Trustee v. Frost Bank et al.*. Adversary No. 24-05034-cag.

[3] *See Verstuyft, et al. v. Wells Fargo Bank, N.A. et al.*, Adversary No. 23-05039-cag; *Armstrong, et al. v. Wells Fargo Bank, N.A. et al.*, Adversary No. 23-05088-cag.

harmed, and the clients' claims are not derivative of any direct harm to the estate. As such, the Trustee lacks standing to bring these causes of action, and the common law claims alleged against the Bank for knowing participation in breach of fiduciary duty and fraud (Counts II and IV), and negligence and gross negligence (Count V) must be dismissed under Rule 12(b)(1).

3. The Trustee has also failed to sufficiently plead the elements of and requisite factual support for his claims, particularly the fraud claims. This proceeding is based solely on conclusory allegations that are not substantiated by factual support; therefore, the Trustee's claims should be dismissed under Rules 9 and 12(b)(6).

4. The common law claims are also preempted and precluded by the Texas Uniform Commercial Code ("UCC") and barred by the economic loss rule, the terms of Account Agreement for the various accounts, and the principle of *in pari delicto*.

5. Many of these defects in standing have already been adjudicated in related proceedings and are therefore barred by the law of the case doctrine. For these and other reasons, the Trustee's claims asserted against the Bank must be dismissed.

**STANDARD OF REVIEW**

6. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). A plaintiff must establish

2

"more than a sheer possibility that a defendant has acted unlawfully" to demonstrate the facial plausibility of a claim. *Id.* at 678.

7.     Allegations must provide the grounds for entitlement to relief, which "requires more than labels and conclusions." *Twombly*, 550 U.S. at 545. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (*quoting Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). The Court may dismiss a complaint under Rule 12(b)(6) if either the complaint fails to assert a cognizable legal theory or the facts asserted are insufficient to support relief based on a cognizable legal theory. *Vines v. City of Dallas, Texas*, 851 F. Supp. 254, 259 (N.D. Tex. 1994); *see also Morrow v. Bank of Am., N.A.*, No. 5:12-CV-00782-OLG, 2013 WL 12131235, at *1 (W.D. Tex. June 10, 2013); *Scott v. Steinhagen Oil Co., Inc.*, 224 F. Supp. 2d 1084, 1085 (E.D. Tex. 2002).

8.     In certain circumstances, Courts can consider materials outside the complaint to support a Rule 12(b)(6) motion to dismiss. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996). In most instances, the district court converts a Rule 12(b)(6) motion to dismiss into a motion for summary judgment if it considers extrinsic materials. Fed. R. Civ. P. 12(d); *Magee v. Reed*, 912 F.3d 820, 823 (5th Cir. 2019). However, a district court may rely on documents attached to or incorporated into the complaint, and also rely on public records, when deciding 12(b)(6) motions. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *see also Lone Star Fund V (U.S.) L.P.*

3

*v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (holding that a district court may review "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint"); *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 (5th Cir. 2012) ("[T]he court may take judicial notice of matters of public record. Here, the document referenced is a pleading filed with a Louisiana state district court, and it is a matter of public record." (citation omitted)).

9.      To satisfy Rule 9, fraud claims must "state with particularity the circumstances constituting fraud" *Legendary Lightning Grp., Inc. v. Optigenex, Inc.*, 4:15-cv-LG-CMC, 2015 WL 3942946 at *2 (E.D. Tex. June 26, 2015) (citing *U.S. ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 186-189 (5th Cir.2009)) (internal quotations omitted). The particular allegations must include the time, place, and the specific contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained. *Id.*

## ARGUMENT AND AUTHORITIES

## I.      The Common Law Claims Must Be Dismissed

10.     The Trustee has brought common law claims against the Bank for knowing participation in breach of fiduciary duty, knowing participation in fraud, and negligence and gross negligence. *See* Complaint at 24-25, 27-30.  The common law claims lack merit and should be dismissed.

### A.      The Common Law Claims Must Be Dismissed for Lack of Standing

11.     The Court should dismiss the Trustee's common law causes of action against the Bank because the Trustee has not pleaded a basis to assert any claims related to funds that the Trustee simultaneously alleges belong to the CP&A Clients,[4] and the Trustee thus lacks standing

---

[4] This Court recently ruled in a related Adversary Proceeding that the Trustee lacked standing to assert identical common law claims against Wells Fargo. Adversary No. 23-05039-CAG, *Mark Verstuyft, et al v.*

to bring those non-derivative claims. Specifically, the Trustee's Complaint repeatedly references "harm to [Pettit's] clients," breaches of duties to "CP&A Clients" (by both Pettit and the Bank), "losses incurred by…CP&A Clients," and similar allegations. *See* Complaint at 2, 5, 25, 30. These Claims seek to recover for damages allegedly sustained by CP&A Clients, and the subject accounts cited by the Trustee include IOLTA and 1031 accounts that, by their very nature, exist to hold the funds of CP&A's individual clients.

12.     "[F]ederal bankruptcy law does not empower a trustee to collect money owed to creditors." *In re Bernard L. Madoff Inv. Secs. LLC*, 721 F.3d 54, 67 (2d Cir. 2013) (citing *Caplin v. Marine Midland Grace Tr. Co. of N.Y.*, 406 U.S. 416, 428 (1972)). Thus, when a bankruptcy court is faced with the question of whether a claim is properly held by a creditor or by the trustee on behalf of a bankruptcy estate, the Fifth Circuit requires that the test for standing focus on whether the creditor has suffered a direct or derivative injury:

> If the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate. In that situation, only the bankruptcy trustee has standing to pursue the claim for the estate so that all creditors will share in any recovery. As for direct-injury claims that belong to a particular creditor or group of creditors, the simple case is when the claim does not involve any harm to the debtor. These cannot be part of the estate.

*In re Buccaneer Res., L.L.C.*, 912 F.3d 291, 293 (5th Cir. 2019) (citations omitted).

13.     When, as in this case, a claim is based on direct harm inflicted upon individual creditors through the loss of their own money as opposed to indirect injury flowing from some predicate harm to the debtor or estate, only the creditors have standing to bring that claim, and the Trustee cannot bring it on their behalf. *See Madoff,* 721 F.3d at 67 (trustee cannot "assume the

---

*Wells Fargo Bank, N.A., et. al*, in the United States Bankruptcy Court for the Western District of Texas. *See* Exhibit D, *Verstuyft* February 7, 2024 Order on Wells Fargo Motion to Dismiss Second Amended Complaint, 2

responsibility of suing third parties on behalf of creditors") (quoting *Caplin*, 406 U.S. at 428); *see also In re Viola*, 469 B.R. 1, 8-9 (B.A.P. 9th Cir. 2012) (trustee for debtor who used accounts to defraud investors lacked standing to sue bank because trustee's claims were "entirely derived from the creditor investors, and would not exist but for their existence and involvement in the bankruptcy"), *aff'd*, 583 F. App'x 669 (9th Cir. 2014); *In re 1031 Tax Grp., LLC*, 420 B.R. 178, 194 (Bankr. S.D.N.Y. 2009) (trustee lacked standing to sue bank for funds debtor stole from 1031 exchange participants).

14.     As stated above, the Trustee has pleaded common law causes of action against the Bank for alleged damages to CP&A Clients. This is further illustrated by the fact that the CP&A Clients are themselves asserting claims against the Bank for the direct loss of funds in Adversary No. 23-05088-CAG, *James C. Armstrong et. al v Wells Fargo Bank, N.A. et al.,* in the District Court for the Western District of Texas ("*Armstrong*"). Exhibit A. The central premise of the CP&A Clients' claims in the *Armstrong* case is that they were directly and individually harmed when Pettit stole money that belonged to them from the IOLTA and other accounts at the Bank, *not* that the CP&A Clients as a group lost money following some antecedent harm to Pettit or CP&A. *See* Exhibit A, 20-23.[5] The Trustee has failed to allege any cognizable basis for why he should be allowed to pursue claims related to funds that are claimed by the CP&A Clients. *See Latitude Sols., Inc. v. DeJoria*, 922 F.3d 690, 695-97 (5th Cir. 2019) (trustee lacked standing to assert claims arising out of injury to creditor); *In re Enron Corp. Sec., Derivative & ERISA Litig*., 511 F. Supp. 2d 742, 798 (S.D. Tex. 2005) (trustee lacked standing to sue third-party under aiding and abetting theories for harm caused directly to creditor); *Segner v. Sinclair Oil & Gas Co.*, No.

---

[5] The Court has previously ruled that those claims "belong" to the *Armstrong* Plaintiffs. Exhibit B January 24, 2024 Rulings of the Court at 36.  As explained below, as a matter of law, any claims related to the Debtors' accounts at the Bank must be based on the Account Agreement or the Texas UCC and evaluated on that basis.

3-11-CV-03606-F, 2012 WL 12885055, at *6 (N.D. Tex. June 4, 2012) (trustee lacked standing because facts alleged in support of claims against third party described direct injury to investor creditors). The Trustee has failed to plead standing to assert the common law claims because they are based on alleged harm to CP&A Clients, and they must be dismissed under Rule 12(b)(1).

15.     The Trustee also lacks standing to bring the common law claims because he purports to bring those claims on behalf of CP&A based on Pettit's conduct. A party cannot bring claims based on its own conduct. *See, e.g., Oracle Elevator Holdco, Inc. v. Exodus Sols, LLC,* No. 4:19-cv-4658, 2021 WL 4077581, at *14 (S.D. Tex. Sept. 8, 2021) (a corporation is liable for the torts of its agents); *In re Sunpoint Secs., Inc.*, 377 B.R. 513, 565-66 (Bankr. E.D. Tex. 2007) (fraudulent acts of sole shareholder are imputable to corporation) *see also Game Sys., Inc. v Forbes Hutton Leasing, Inc*., No. 09-cv-00051, 2011 WL 2119672, at *6 (Tex. App.—Fort Worth May 26, 2011, no pet.) ("A shareholder, however, does not owe (or breach) a fiduciary duty to a corporation[.]"); *Doctors Hosp. of Hyde Park*, 474 F.3d 421, 428 (7th Cir. 2007) (sole shareholder cannot defraud himself or breach a fiduciary duty to himself). For example, it makes no sense that CP&A could be defrauded by Pettit because it could not reasonably rely on representations made by Pettit to CP&A—their knowledge is identical. *See In re Tufts Elecs., Inc.*, 746 F.2d 915, 917 (1st Cir. 1984) (sole shareholder, director, and president of company cannot be accused of defrauding or concealing information from himself); *see also Mercedes-Benz USA, LLC v. Carduco, Inc.* 583 S.W.3d 553, 554 (Tex. 2019) (no justifiable reliance when plaintiff had information that contradicted the alleged representation). Likewise, it makes no sense that Pettit could breach a fiduciary duty to CP&A when by virtue of that relationship CP&A approved of and engaged in the same conduct.

16.     In a related Adversary Proceeding, this Court has recognized that Pettit and CP&A

are a unity, and that it is a logical fallacy to attempt a distinction. Adversary No. 23-05039-CAG, *Mark Verstuyft, et al v. Wells Fargo Bank, N.A., et. al*, in the United States Bankruptcy Court for the Western District of Texas ("*Verstuyft*"). The Court commented during its January 24, 2024 rulings on Wells Fargo's motion to dismiss identical common law claims: "Chris Pettit is Chris Pettit and Associates. There is no one else. There may have been other people that worked there. There may have been other lawyers that worked there. But at the end of the day, Chris Pettit controlled Chris Pettit and Associates." Exhibit B, January 24, 2024 Rulings of Court, 34. The Trustee's common law claims must be dismissed for lack of standing.

**B.      The Common Law Claims Are Barred by the Law of the Case Doctrine**

17.      The common law claims are barred by the law of the case doctrine based on the Court's rulings in *Verstufyt*. The law of the case doctrine is a judicial doctrine that promotes finality and efficiency in the judicial process by encouraging courts to follow their own decisions within any given case. *In re Pilgrim's Pride Corp.*, 442 B.R. 522, 529 (Bankr. N.D. Tex. 2010). As the Supreme Court succinctly put it, the doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988). The doctrine "is not limited to situations in which one court retains a case from beginning to end, but also extends to decisions of a coordinate court in the same case." *Pilgrim's Pride*, 442 B.R. at 529. "A bankruptcy case is comprised of all components of the bankruptcy . . . including all litigation." *Id*. at 530. Adversary proceedings are part of a bankruptcy case. *Id*. (citing *Cohen v. Bucci,* 905 F.2d 1111 (7th Cir.1990) ("Adversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case....")).

18.      The law of the case doctrine thus applies "in adversary proceedings in a bankruptcy

case, and even between separate adversary proceedings in the same bankruptcy case." *Id*. (citing *Bordeau Bros., Inc. v. Montagne (In re Montagne),* No. 08-1024, 2010 WL 271347, at *5-6, at *15, (Bankr. D. Vt. Jan. 22, 2010) ("Since different adversary proceedings in the same main case do not constitute different 'cases,' it would follow that the law of the case doctrine as articulated in one adversary proceeding would apply in another adversary proceeding filed in the same case.")). As the Northern District of Texas explained in *Pilgrim's Pride*:

> While this maxim is most often applied to require like treatment under a plan or in distributions from a liquidation, it only makes sense that it would apply equally to the allowance and disallowance of claims. There are few things that would frustrate the purpose of the Bankruptcy Code and the certainty of bankruptcy proceedings more than if a court arrived at different results in a given case respecting the allowance and disallowance of claims based on identical or substantially similar facts and identical legal theories. To allow the claims of [one party] while claims based on like facts and the same legal theory are disallowed in the same chapter 11 case[] . . . would fly in the face of Congressional goals and policy.

*Id*. at 531.

19.     The instant case fits perfectly within the doctrine's intended framework as described above. The Trustee's knowing participation in breach of fiduciary duty, knowing participation in perpetration of fraud, and negligence claims against the Bank in this case are the same causes of action this Court previously dismissed against Wells Fargo for lack of standing in *Verstuyft*. *See* Exhibit C, *Verstuyft* Second Amended Complaint; Exhibit B, *Verstuyft* Rulings of Court; and Exhibit D, *Verstuyft* Order on Wells Fargo Motion to Dismiss Second Amended Complaint. These are precisely the sort of "claims based on like facts and the same legal theor[ies] . . . disallowed in the same chapter 11 case[]" analyzed by the *Pilgrim's Pride* court. *Id*. Exhibit D, February 7, 2024 Order on Wells Fargo Motion to Dismiss Second Amended Complaint.

20.     The same principles relied on by the Court to determine the Trustee's lack of

standing to pursue knowing participation in breach of fiduciary duty, knowing participation in perpetration of fraud, and negligence claims against Wells Fargo in *Verstuyft* apply to bar the Trustee's identical causes of action against the Bank in this case because the Trustee does not own those claims. Although the Trustee may attempt to distinguish *Verstuyft* from this action, the only noteworthy difference between the two cases supports the Bank's argument for dismissal. Specifically, the Trustee's complaint in *Verstuyft* identified $3,513,875.98 of alleged estate property, and the Court referred the Trustee's common law claims concerning that amount to arbitration. Exhibit D, *Verstuyft* Order, 2. However, the Court's Order in *Verstuyft* dismissed the Trustee's common law claims as to "***all other funds*** … ***deposited by or on behalf of CP&A clients*** or 1031 Exchange parties" for lack of standing under Rule 12(b)(1). *Id*. Conversely, the Trustee's Complaint against the Bank in this case does not identify any specific amount of alleged estate property, and arbitration is not at issue. *See generally* Complaint. Because the Trustee has not demonstrated why the funds at issue in this case are anything other than "funds … deposited by or on behalf of CP&A clients or 1031 Exchange parties" that warranted dismissal of the Trustee's common law claims in *Verstuyft*, the Court should for the same reason dismiss the Trustee's identical knowing participation in breach of fiduciary duty, knowing participation in perpetration of fraud, and negligence claims against the Bank in this case for lack of standing under Rule 12(b)(1). Exhibit D, *Verstuyft* Order, 2.

21.      Simply put, the Court correctly dismissed identical claims against Wells Fargo in *Verstuyft* despite the Trustee's complaint in that case having a considerably greater quantity and quality of factual allegations. *See generally* Exhibit C, *Verstuyft* Second Amended Complaint. Given the comparative lack of factual support for the exact same causes of action pleaded in this subsequent parallel adversary proceeding against the Bank and the clear propriety of applying the

law of the case doctrine under *Pilgrim's Pride*, the Court should once again dismiss the knowing participation in breach of fiduciary duty claim (Count II) as well as the additional common law claims for knowing participation in fraud and negligence and gross negligence (Counts IV and V).

**C.      The UCC Applies to Preempt and Preclude the Trustee's Common Law Claims**

**i.      The Common Law Claims Are Displaced or Preempted by the UCC**

22.      The Common Law claims against the Bank are preempted by the UCC because they are based on allegations of account transactions governed by that statute. *See* Complaint at 14-18, 20-21, 24, 27-30.

23.      "Article 4 of the Uniform Commercial Code ('UCC'), found in Texas Business and Commerce Code Chapter 4, is the governing body for bank deposits and collections, and it serves as the guidepost for [the Court's] analysis." *Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 800 F. App'x. 239, 244 (5th Cir. 2020) (per curiam); Tex. Bus. & Com. Code Ann. §§ 4.101 *et seq.*. "Unless a specific provision of the UCC provides otherwise, the UCC 'preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies. The UCC's preemptive effect 'extends to displacement of other law that is inconsistent with the purposes and policies of the Uniform Commercial Code, as well as with its text.'" *Cadence Bank v. Elizondo*, 606 S.W.3d 802, 811 (Tex. App.—Houston [1st Dist.] 2020), *rev'd on other grounds, Cadence Bank, N.A. v. Elizondo*, 642 S.W.3d 530 (Tex. 2022) (citation omitted) (quoting Tex. Bus. & Com. Code § 1.103 cmt. 2.). This preemption of common law claims applies in cases where, as here, the complained of acts or omissions arise out of transactions governed by Tex. Bus. & Com. Code § 4.406.[6] Therefore, the common law claims must be dismissed.

---

[6] To the extent that the Trustee is alleging funds transfers governed by Article 4A, claims arising out of those transaction are also preempted by Chapter 4A of the UCC. *See Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*, 462 S.W.3d 128, 138 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *Moody Nat'l Bank v. Tex. City Dev. Ltd. Co.*, 46 S.W.3d 373, 378-79 (Tex. App.–-Houston [1st Dist.] 2001, pet. denied));

### ii.    The Common Law Claims Are Barred Because the Alleged Improper Banking Transactions Were Not Timely Reported

24.    The common law claims are all based on alleged improper banking transactions and are barred because those transactions were not timely or properly reported. Section 4.406(f) states that without regard for care or lack of care, a customer must discover improper or erroneous transactions and report those transactions within one (1) year or else the customer is precluded from recovering from the bank for the unauthorized transactions. Tex. Bus. & Com. Code § 4.406(f). Further, a bank may modify the notice requirement to require a shorter deadline. Tex. Bus. & Com. Code § 4.103(a); *Am. Airlines Emps. Fed. Credit Union v Martin*, 29 S.W.3d 86, 96 (Tex. 2000). As the Comments to the UCC explain: "Section 4-406 evidence[s] a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notifications of banks of [unauthorized transactions] … and in favor of reasonable time limitations on the responsibility of banks for payment" of same. Tex. Bus. & Com. Code § 4.406 cmt. 7.

25.    In order to open accounts at the Bank, the Debtors executed a written Account Agreement that governed their banking relationship with the Bank. Consistent with the UCC, Section 14 of the Account Agreement also requires prompt reporting of alleged errors and fraudulent transactions:

> **Your Duty to Report Other Errors.** In addition to your duty to review your statements for unauthorized signatures, alterations and forgeries, you agree to examine your statement with reasonable promptness for any other error - such as an encoding error. In addition, if you receive or we make available either your items or images of your items, you must examine them for any unauthorized or missing indorsements or any other problems. You agree that the time you have to examine your statement and items and report to us will depend on the circumstances. However, this time period shall not exceed 60 days. ***Failure to examine your statement and items and report any errors to us within 60 days of when we first send or make the statement available precludes you from asserting a claim against us for any errors on items identified in that statement and as between you and us the loss will be entirely yours.***

---

*see also* Tex. Bus. & Com. Code § 4A.102, *et seq.*

Exhibit E, Account Agreement, 6 (emphasis added).

26.     The Texas Supreme Court has expressly approved such language in deposit agreements that shorten the time period to notify the bank of unauthorized or erroneous account activity and has enforced them against plaintiff account holders who fail to plead or show they complied with the notice requirement. *See Martin*, 29 S.W.3d at 97-98. The *Martin* court held that because the plaintiff had not reported the allegedly unauthorized transaction until more than 60 days after the bank statements were made available, there could be no recovery against the bank. *Id.* at 98.

27.     Under the Account Agreement in effect between the parties in this case, it was similarly incumbent upon the account holder to review the items and statements made available by the Bank and notify the Bank of any unauthorized transactions within the time called for in that Agreement. Standing in the shoes of the Debtors, the Trustee in this case has not pleaded any facts indicating the purportedly unauthorized transactions were timely reported under the Account Agreement or Section 4.406. Therefore, even if the Trustee had properly pleaded claims under the UCC instead of the tort claims that are clearly preempted, he would still be precluded from recovering under the UCC because he has failed to even plead timely compliance under the Agreement or statute. *See Martin*, 29 S.W.3d at 96; *Compass Bank v. Calleja-Ahedo*, 569 S.W.3d 104 (Tex. 2018); *see also Hatcher Cleaning Co. v. Comerica Bank-Tex.*, 995 S.W.2d 933 (Tex. App.—Fort Worth 1999, no pet.) (customers must identify the specific transactions complained of, and vague references to unauthorized transactions in pleadings are insufficient).

28.     Finally, the Trustee's claims are also barred by the "repeat wrongdoer" rule found in Section 4.406(d). This rule provides an account holder 30 days to examine account statements or items and notify the bank of any unauthorized transactions. *See* Tex. Bus. & Com. Code §

4.406(d). If a customer should have discovered a wrongdoer's unauthorized transaction by examining the statements and items, and fails to report that transaction to the bank, the bank cannot be liable for any subsequent unauthorized transactions by the same wrongdoer. *See id.*; *see also Canfield v. Bank One, Tex., N.A.*, 51 S.W.3d 828, 837 (Tex. App.—Texarkana 2001, pet. denied). As the Trustee has not pleaded any facts suggesting the alleged improper transactions were timely reported to the Bank under Section 4.406(d), and all the transactions complained of were allegedly executed by the same wrongdoers—the Debtors—the Trustee's claims against the Bank arising out of those transactions are barred by the repeat wrongdoer rule. *See Canfield*, 51 S.W.3d at 837.

### iii. The Trustee Complains of Authorized Transactions That Are Not Actionable

29. At bottom, the Trustee asserts in this case that the Bank should be held liable for complying with an authorized account signatory's requests to complete various transactions required of the bank under its deposit agreement with the account owner. The Trustee advances this theory under numerous tort causes of action in an effort to avoid the clear statutory mandates of the UCC and corresponding language in the Account Agreement.

30. However, The Bank cannot be liable for complying with authorized instructions. A bank may charge against a customer's account for "an item that is properly payable." Tex. Bus. & Com. Code § 4.401(a). To be properly payable, an item must be "authorized by the customer and…in accordance with any agreement between the customer and the bank." *Id*. As the Trustee's Complaint states, the transactions at issue in this case were made at the direction of the Debtors. *See* Complaint at 23-30. They were also in accordance with the Account Agreement, which reflects the Debtors' authority to "withdraw or transfer all or any part of the account balance at any time." Exhibit E, Account Agreement, 2. And as this Court recognized in the *Verstuyft* rulings, the Trustee stands in the shoes of the Debtors and is bound by the Account Agreement to the same extent the

Debtors would have been prepetition. *See* Exhibit B, January 24, 2024 Rulings of Court, 40, 44. The Trustee therefore cannot bring claims against the Bank based on transactions authorized by the Debtors. Allowing the Trustee to do so in this case would create a new cause of action directly contrary to the statutory and common law of Texas by requiring Texas banks to oversee the authorized transactions of lawyers and law firms in order to ensure they are not committing crimes.

31.     In sum, the Trustee has not alleged that the transactions at issue in the Complaint were not authorized by the Debtors in their capacity as the Bank's customers. And even if the Trustee had pleaded acts and omissions related to unauthorized transactions rather than authorized transactions, those claims would be governed and preempted by Section 4.406, and thus still require dismissal because they were not timely reported under the Account Agreement as shown above.

**D.      The Account Agreement Bars the Trustee's Claims**

32.     In addition to the above-quoted language in Section 14 of the Account Agreement that bars the Trustee's claims for failure to timely report disputed transactions, the Trustee's common law claims based on fiduciary relationships between Debtors and their clients are also precluded by the Account Agreement. Section 29 of the Account Agreement, which is titled "Fiduciary Accounts," is particularly relevant to these claims asserted against the Bank:

> **Fiduciary Accounts.** Accounts may be opened by person acting in a fiduciary capacity. A fiduciary is someone who is appointed to act on behalf of and for the benefit of another. ***We are not responsible for the actions of a fiduciary including the misuse of funds. This account may be opened and maintained by a person or person named as a trustee under a written trust agreement, or as executors, administrators, or conservators under court orders. You understand that by merely opening such an account, we are not acting in the capacity of a trustee in connection with the trust nor do we undertake any obligation to monitor or enforce the terms of the trust or letters.***

*Id.* at 8 (emphasis added).

33.     The above language, which governed the relationship between Debtors and the Bank from the opening of Debtors' accounts at the Bank in 2017, includes three specific disclaimers that are critical to the analysis of the Trustee's claims. First, it disclaims the existence of a fiduciary relationship between the Bank and the Debtors. Second, it explicitly disclaims any responsibility by the Bank for the actions of a fiduciary account holder such as the Debtors—*including the misuse of funds*. Third, it disclaims any obligation to "monitor or enforce the terms" of any trust underlying such fiduciary accounts.

34.     The Trustee does not allege that the Bank owed a fiduciary relationship to the Debtors, but to be clear, it did not. There was no special relationship between the Debtors and the Bank, and under Texas law, the relationship was purely contractual in nature under Texas law. *See, e.g., Strobach v. WesTex Cmty. Credit Union*, 621 S.W.3d 856, 873 (Tex. App.—El Paso 2021, pet. denied). By the terms of the Account Agreement, the Debtors agreed that the Bank was not responsible for the actions of a fiduciary or the application of funds from fiduciary accounts. As this Court held the Trustee stands in the shoes of the Debtors and is bound by the Account Agreement, *see* Exhibit B, January 24, 2024 Rulings of Court, 40, 44., the Trustee's claims are barred by the terms of the Account Agreement.

**E.      The Common Law Claims Are Barred by the Economic Loss Rule**

35.     When, as here, the relationship between a bank and its customer is purely contractual, the economic loss rule prohibits the account holder (or in this case the Trustee standing in the shoes of the customer) from suing the bank under tort causes of action to recover purely economic losses. *See, e.g., Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Simply stated, under the economic loss rule, a duty in tort

does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim.").

36.     Application of the economic loss rule to the instant case requires that the common law claims be dismissed as a matter of law. *See, e.g.*, *Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993, 1010-11 (N.D. Tex. 2013) (dismissing negligence claim against Wells Fargo based on bank's alleged failure to investigate the customer's account because "absent a special relationship, any duties [the bank] owed to [the customer] are contractual and precluded by the economic loss doctrine"); *Frost Nat'l Bank v. Heafner*, 12 S.W.3d 104, 111 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (holding plaintiff customer's allegations that bank had not verified check signatures, had not used represented safeguards, and had violated its own internal policies and procedures "amount to nothing more than a complaint that [bank] did not comply with the terms of the deposit account agreement and, if true, [bank's] actions contrary to these representations result only in a breach of contract claim").

37.     The economic loss rule has been specifically extended in the context of fraud claims like those in the Trustee's Complaint. *See Midwestern Cattle*, 800 F. App'x. at 248 ("[Plaintiff] asserts [the bank] owed it a duty because 'if a bank knows or has reason to know that its customer is perpetrating a fraud, the bank has a duty not to continue to enable the fraud.' [Plaintiff's] position is foreclosed by Texas law, which maintains that, in the absence of a fiduciary or confidential relationship, a bank owes no duty to a person with whom the bank has not dealt and otherwise has no relationship.").

38.     In short, the relationship between the Bank and the Debtors was completely governed by the Account Agreement that delineated the parties' respective obligations. The terms of the Account Agreement dictated that the Bank was not responsible for the actions of fiduciaries

like Pettit and CP&A, was not responsible for the misuse of funds by such fiduciaries, and was not responsible for monitoring or ensuring the Debtors' proper use of fiduciary accounts. The Trustee has declined to allege any specific breach of the Account Agreement by the Bank, and the common law claims are barred by the economic loss rule and must be dismissed.

**F.      The Common Law Claims Are Precluded by the Principle of *in pari delicto*.**

39.      "*In pari delicto* is an equitable doctrine that bars a corporate plaintiff from recovering from a defendant when the corporation's management participated in the alleged wrongdoing." *Floyd v. CIBC World Mkts., Inc.*, 426 B.R. 622, 642 (Bankr. S.D. Tex. 2009). *In pari delicto* applies to bankruptcy trustees and may be raised in a motion to dismiss so long as the facts pled with the four corners of the trustee's complaint warrant its application. *In re Today's Destiny, Inc.*, 388 B.R. 737, 747-48 (Bankr. S.D. Tex. 2008). "Texas law governs whether *in pari delicto* bars the Trustee's claims," and, in Texas, "the rule bars a party from asserting an action based upon the party's own criminal conduct," *Id*. at 748.

40.      The Trustee asserts the common law claims on behalf of CP&A, the law firm of which Chris Pettit was the sole shareholder and managing director. *See* Complaint at 1 n.1. Pettit's use of CP&A firm accounts and assets means CP&A itself was a perpetrator of the fraud underlying the Trustee's claims. CP&A was the vessel through which Pettit deceived the Bank and through which he transacted with, and defrauded, his clients. The firm was instrumental to his embezzlement scheme and, as such, is barred from recovering any damages arising from his fraud. *See Seven Seas Petroleum, Inc. v. CIBC Mkts. Corp.*, No. 08-3048, 2013 WL 3803966, at *12 (S.D. Tex. July 19, 2023) (holding that *in pari delicto* barred the trustee's claims that CIBC had aided and abetted Seven Seas' breach of fiduciary duty because Seven Seas had played a principal role in the alleged breach); *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers &*

*Lybrand, LLP*, 322 F.3d 147, 163-64 (2d Cir. 2003) (affirming dismissal partially on the grounds of *in pari delicto* where the district court had found that Color Tile bore "at least substantially equal responsibility with Coopers for permitting [the Transaction] to go forward on the basis of inflated projections") (alteration in original).

41.     The Second Circuit's decision in *In re Bernard L. Madoff Investment Securities LLC* is especially instructive. 721 F.3d 54 (2d Cir. 2013). There, the trustee sued on behalf of a bankrupt organization and the victims of its former principal, the notorious Ponzi fraudster Bernie Madoff. It ruled that most claims were barred from recovery by *in pari delicto* because the underlying fraud was a "wrongdoing in which Madoff . . . participated." *Id*. at 57-58. So is the case here, where a trustee brings a claim on behalf of a bankrupt organization by and through its services. *In pari delicto* therefore bars the Trustee's common law claims against the Bank.

### G.     The Common Law Claims Must Be Dismissed for Failure to State a Claim

#### i.     The Knowing Participation in Breach of Fiduciary Duty Claim Must Be Dismissed

42.     The Court should also dismiss the Trustee's knowing participation in breach of fiduciary duty claim[7] because it does not state the elements of a cause of action, let alone plead sufficient facts to survive a challenge under Rule 12(b)(6).

---

[7] The Trustee's claims for knowing participation in breach of fiduciary duty and knowing participation in perpetration of fraud should also be dismissed because they are essentially relabeled claims for "aiding and abetting," which is a cause of action that the Fifth Circuit has held does not exist in Texas. *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781-82 (5th Cir. 2018) (holding defendant was entitled to judgment as a matter of law "on plaintiffs' aiding-and-abetting claim because no such claim exists in Texas."); *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239, 249 (5th Cir. 2020) ("[T]he Texas Supreme Court has not expressly decided whether Texas recognizes a cause of action for aiding and abetting, and … a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts."). As the Texas Supreme Court has withheld its judgment on whether to recognize the cause of action for aiding and abetting, *see First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017), the Bank contends that the Court should not let the Trustee's relabeled aiding and claims proceed in this case.

43. The Complaint brings a cause of action against the Bank for knowing participation in Pettit's beach of the fiduciary duty he owed to CP&A and its clients. Complaint, 24-25. The elements of a knowing-participation claim are: (1) the existence of a fiduciary duty owed by a third party to the plaintiff; (2) the defendant knew of the fiduciary relationship; and (3) the defendant was aware of his participation in the third party's breach of its duty. *Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020, pet. denied). A "knowing participation" claim requires a plaintiff to show that the defendant had "actual awareness, at the time of conduct, that a fiduciary duty was owed and that the fiduciary was breaching that fiduciary duty." *CBIF Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 WL 1455407, at *16 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) (mem. op.); *accord, JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W. 3d 387, 419 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Allegations of constructive knowledge or that the defendant "should have known" are insufficient. *See Franklin D. Azar & Assocs., P.C. v. Bryant*, No. 4:17-CV-00418, 2019 WL 5390172, at *4 (E.D. Tex. July 30, 2019), *report and recommendation adopted*, 2019 WL 4071782 (E.D. Tex. Aug 29, 2019); *see also Litson-Gruenber v. JPMorgan Chase & Co.*, No. 7:09-CV-056, 2009 WL 4884426, at *2 (N.D. Tex. Dec. 16, 2009) (allegation of "knew or should have known" is insufficient).

44. The Trustee does not allege facts to support the elements of this cause of action, and the Complaint's allegations in Count II attributing knowledge or awareness of Pettit's crimes to the Bank wholly fail to provide the level of factual support required to avoid dismissal under Rule 12(b)(6). The conclusory nature of these allegations is encapsulated by the following statement in Paragraph 5.12 of the complaint: "[u]pon information and belief, [the Bank] had actual knowledge of the chronic misuse of the [the Bank] accounts by Pettit and elected to

disregard those actions in violation of its duty." This allegation does not identify the person(s) who allegedly obtained this knowledge on behalf of TPB, identify the subject accounts, state the character or date(s) of the purported misuse, explain how it constituted "chronic" misuse, or provide the nature and amount(s) of the funds allegedly involved, yet the Trustee still asserts that the Bank somehow had "actual knowledge" of these "facts" that are wholly omitted from the Complaint. (Complaint, 24-25) *See In re Superior Air Parts, Inc.*, 486 B.R. 728, 744 (Bankr. N.D. Tex. 2012), *aff'd sub nom. Lycoming Engines v. Superior Air Parts, Inc.*, No. 3:13-CV-1162-L, 2014 WL 1976757 (N.D. Tex. May 15, 2014) ("[T]here are no factual allegations with respect to how [Defendant] obtained the data, when it obtained the data, what data it obtained, or how [Defendant's] conduct violated contractual, moral, industry or legal standards. The other allegations underlying this claim are equally conclusory."); *Legendary Lightning Group, Inc. v. Optigenex, Inc.*, No. 4:15CV53-LG-CMC, 2015 WL 3942946, at *4 (E.D. Tex. June 26, 2015) ("There are no facts pled in support of [Plaintiff's] assertion that it believes [Defendant] knew it would not perform under the contract when it promised that its stock would be tradable after it received [Plaintiff's] funds. The Court is left with a simple allegation … and nothing else."). The Trustee's attempt to avoid the conclusory nature of these allegations by preceding them with the well-worn phrase "upon information and belief" is unavailing, as "[a]llegations pled on 'information and belief' should be reviewed in the same way as all factual allegations in a complaint—that is, the court should review them under *Twombly's* 12(b)(6) formulation requiring sufficient facts pled to make a claim plausible." *Superior Air* 486 B.R. at 740; *see also Legendary Lightning* 2015 WL 3942946 at *4. As such, "[c]onclusory allegations made upon information and belief are not entitled to the presumption of truth … and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *Id*. at 741.

45.     Yet, even if the Trustee had pleaded the baseline elements of a knowing participation claim, he has also failed to allege sufficient facts to support those elements to satisfy *Twombly*. First, the Complaint presumes satisfaction of the second element (knowledge of the fiduciary relationship) and third element (knowledge of participation in third party's breach). Regarding the former, the fact than a bank client is an attorney does not automatically impute to a financial institution the knowledge that the client owes a fiduciary duty to some unknown third party, *even where* that attorney has an IOLTA account with that institution. *See Olmos v. David B. Giles P.C.*, No. 3:22-CV-0077-D, 2022 WL 1289556, at *4-5 (N.D. Tex. Apr. 28, 2022) (holding that plaintiff's transfer of funds to an attorney's IOLTA account was not, standing alone, enough to create a formal or informal fiduciary duty between her and the attorney). The Trustee claims that the Bank "was familiar with IOLTA accounts" and therefore knew a fiduciary duty was owed, but IOLTA accounts are multipurpose in nature and can be used, for example, to deposit attorney's fees received from clients. *See Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 408-09 (8th Cir. 2017) ("Again, the plaintiffs have not disputed that [the bank's] understanding of an IOLTA was that it could include 'funds for an individual client, multiple clients, and could include funds that belong to the lawyer, themselves.'").

46.     Abstract awareness of a fiduciary duty owed to an unspecified third party is not enough to satisfy the second element. A plaintiff must plead actual knowledge of a specific fiduciary duty and the details thereof to survive a motion to dismiss. *See In re Agape Litig.*, 773 F. Supp. 2d 298, 325 (E.D.N.Y. 2011) (granting a Rule 12(b)(6) motion to dismiss where investor plaintiffs "have not plausibly alleged that [Bank of America] had knowledge of the precise agreement [creating fiduciary duty] between Agape and the Plaintiffs."); *see also Groom v. Bank of Am.*, No. 8:08-CV-2S67-JDW-EAJ, 2012 WL 50250, at *3 (M.D. Fla. Jan. 9, 2012) ("Because

22

Plaintiffs did not allege facts showing that the banks were aware of a fiduciary relationship between Plaintiffs and Pearlman, it follows that the banks had no knowledge of any breach of that duty.").

47. The Trustee's allegations regarding the third element, requiring actual knowledge of the third party's *breach* of fiduciary duty, are entirely speculative. The defendant must have had "*actual awareness*, at the time of conduct, that a fiduciary duty was owed and that *the fiduciary was breaching that fiduciary duty*." *CBIF Ltd. P'ship*, 2017 WL 1455407, at \*16 (emphases added) (quotation omitted). But the Trustee's factual allegations do not plead this, nowhere specifying any fact that would actually apprise the Bank of the knowledge that Pettit was breaching his fiduciary duty. The Trustee instead speculates as to knowledge, alleging that Pettit (1) had a history of unusual and irresponsible banking activity, (2) that the many "red flags" around Pettit's banking activity warranted inquiry and investigation into Pettit's account use, and (3) that these facts, considered together, mean that the Bank *should have known* that Pettit was breaching his fiduciary to CP&A and its clients. These allegations are insufficient to plead actual knowledge under the standard mandated by *Twombly* and cannot survive a Rule 12(b)(6) motion to dismiss. A plaintiff must plead "more than labels and conclusions," and labelling unknowing, negligent, or even reckless conduct as "knowing" conduct will not do. *Twombly*, 550 U.S. at 555.

48. Whether Pettit was an irregular and irresponsible user of financial services is a different question than whether the bank *knew* he was breaching a fiduciary duty, and the Bank's own actions in accommodating these habits do not permit the inference of knowing participation in said breach. The Eighth Circuit in *Zayed v. Associated Bank, N.A.* upheld a grant of summary judgment where "none of the circumstantial evidence compiled by the [defendant] points to anything more than 'sloppy banking' by [the bank employee] or 'red flags' that, with the benefit

of hindsight, should have prompted further investigation or inquiry. Even on this twenty-seven volume, six-thousand page record, the leap cannot be made to infer that [the bank employee] or anyone at Associated Bank *actually knew* about the Ponzi scheme without resorting to speculation and conjecture." *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 715 (8th Cir. 2019) (emphasis added). The Trustee's allegations do not bridge this gap between alleged "sloppy banking" and knowing participation in malfeasance, and they cannot show that the Bank was knowingly processing transactions in furtherance of any breach of fiduciary duties by Pettit.

49.     Further, courts have also broadly rejected the position that allegations of constructive knowledge of malfeasance, imputed by "red flags" in an account owner's activity, are an acceptable substitute for allegations of actual knowledge with respect to knowing participation in breach of fiduciary duty by a financial institution. "[M]erely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive *Twombly*." *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) (holding that allegations regarding "a multitude of atypical transactions and procedural oddities" did not raise a plausible inference of actual knowledge); *Paskenta Band of Nomlaki Indians v. Umpqua Bank*, 846 F. App'x 589, 590 (9th Cir. 2021) (holding that actual knowledge is required and rejecting plaintiff's argument "that various irregularities required further investigation by Umpqua Bank to determine whether Paskenta employees were engaged in wrongdoing."); *Groom*, 2012 WL 50250 at *3 (holding that the movement of "vast sums of money," engagement in "unusual transactions," and other red flags cannot impute knowledge of breach to the bank); *Nathel v. Siegal*, 592 F. Supp. 2d 452, 468 (S.D.N.Y. 2008) (holding that "to plead the second element … a plaintiff must allege actual knowledge—allegations of constructive knowledge *or recklessness* are insufficient" (emphasis added)). Recklessness, procedural oddities,

unusual transactions, and the movement of vast sums of money are precisely what the Trustee alleges, and all have been spoken to by courts and *rejected* as sufficient to allege knowledge of malfeasance. The Bank's knowledge of the breach being within the realm of "sheer possibility" does not make it sufficient under the standard dictated by *Twombly* and *Iqbal*.

50.     That one of the accounts in question was an IOLTA account is of no moment. Again, an account owner's opening and use of an IOLTA account is not enough to impute knowledge of a fiduciary duty. "The multiple-source nature of the IOLTA precluded St. Louis Bank and its employees from knowing whether the transactions in the account involved fiduciary funds." *Rosemann v. St. Louis Bank*, 858 F.3d 488, 495 (8th Cir. 2017); *see also Aguilar*, 853 F.3d at 409 (holding that the lawyer's use of IOLTA accounts in a breach of fiduciary duty could not be used to infer the bank's knowledge or bad faith processing of IOLTA-involved transactions). The Bank's Account Agreement also disclaims responsibility for the maintenance of fiduciary or trust accounts and the obligation "to act as trustee or inquire into [the account owner's] powers or responsibilities over this account." Exhibit E, Account Agreement at 8. The Trustee should not be allowed recourse to any argument that the specific nature of IOLTA accounts mandates the conclusion that the Bank *knew* that transfers from such accounts involved fiduciary funds. Such knowledge is not presumed by law or by the specific account arrangement at issue here.

51.     The Trustee also alleges that the Bank failed to uphold its obligations under federal anti-money laundering law, specifically the "Know Your Customer" requirements. "'Know Your Customer' obligations," however, "are, standing alone, far from sufficient to support a strong inference that [the bank] had actual knowledge" of unlawful acts and "the strongest inference one could draw therefrom is that [the bank] *should have known* of [the] wrongdoing, not that it had *actual knowledge* thereof." *Berman v. Morgan Keegan & Co.*, 455 F. App'x 92, 95 (2d Cir. 2012)

(emphases added). That a breach of fiduciary duty occurred while the Know Your Customer and anti-money laundering obligations were operative does not make a bank strictly liable for all malfeasance that occurs on its watch—plaintiffs still must independently prove the fact of actual knowledge itself. *See id.* at 95-96. Further, the Complaint itself points to several instances where the Bank followed up and asked Pettit for explanations as to certain account activity. Complaint at 16-17. To the extent that any transactions complained about by the Trustee involved a client for legal services, Pettit was required to maintain the confidentiality of the nature of the transactions. Tex. Disciplinary Rules Prof'l Conduct R. 1.05(b)(1), *reprinted in* Tex. Gov. Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). Therefore, the accusation that the Bank's monitoring was insufficient suggests the Bank should have inquired further about the details and context of account activity, which would have necessarily included potentially private or conceivably confidential information involving the attorney-client relationship.

52.     Taken as a whole, the Trustee's allegations amount to an assertion that the Bank *should have known* of Pettit's fiduciary duties to his clients and of his unlawful acts and that his usage of the accounts warranted an investigation into his financial activities, obligations, and business. But this gap—that between the "actual knowledge" required by knowing participation and "constructive knowledge" of unlawful acts that a stricter bank should have discovered—has been strictly policed by federal courts. They have consistently proved to be unwilling to accept warning signs, unusual banking activity, legalistic readings of anti-money laundering laws, and even recklessness as sufficient for meeting the higher standard of actual knowledge. The Trustee's pleadings are insufficient under the standard promulgated by *Twombly*, making the Bank's knowledge *conceivable* but not, without more, *plausible*.

### ii. The Knowing Participation in Perpetration of Fraud Claim Must Be Dismissed

53. The knowing participation in fraud claim must be dismissed under Rule 12(b)(6) because the Trustee has once again failed to state the elements of a claim for knowing participation in fraud or plead sufficient supporting facts and instead relies on a misapplication of the *Pierce* Doctrine. Complaint at 27-29. As in a knowing participation in fiduciary duty claim, a knowing participation in fraud claim requires actual knowledge. As discussed above, the Trustee has not pleaded actual knowledge or awareness as required to support this cause of action.

54. The Trustee also cites the "*Pierce Doctrine*," alleging that the Bank is liable as a principal because it knowingly participated in, and benefited from, the perpetration of fraud by Pettit against CP&A's clients. Complaint at 27-28. *See Pierce v. Fort*, 60 Tex. 464, 470 (1883). "The partaking of the benefits of a fraudulent transaction makes the participants principals and liable as such." *Corpus Christi Area Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 202 (Tex. App.—San Antonio 1991, no writ)(quoting *Five Star Transfer & Terminal Warehouse Corp. v. Flusche*, 339 S.W.2d 384, 387 (Tex. App.—Texarkana 1960, writ ref'd n.r.e.). The Trustee misstates this rule, the contexts in which it has been applied, and its purported primacy in subsequent Texas cases.

55. In *Pierce*, the case promulgating this doctrine, a woman was fraudulently induced into transferring large tracts of her land by her husband and a W.B. Wright, along with some others. *Pierce*, 60 Tex. at 465-66. The court concluded that Wright, as an accomplice to the fraud, could be held liable as though he were the husband, the primary perpetrator. *Id*. at 470-71. The Trustee cites a select portion of the case and omits two important factual distinctions. First, Wright was present at the time the fraudulent transfer was made, knew the transfer was fraudulent, and *lied to the plaintiff* about the document she was signing. *Id*. at 465-66. The Trustee alleges no equivalent

action on the part of the Bank—no representations were made to CP&A's clients, let alone fraudulent ones, and their actions were limited to transacting with Pettit. The Bank did not knowingly participate in the perpetration of fraud (nor does the Trustee allege facts supporting such a conclusion); did not make itself willfully blind to any fraud it knew was being perpetrated; and, relative to Wright's role in *Pierce*, was very far removed from the fraudster's scheme.[8]

56.      *Pierce* also differs from the allegations here because in *Pierce*, Wright received a portion of the land so transferred and thereafter transferred it to a buyer in consideration for $1,800. *Id*. at 466. He received land in consideration for nothing, directly as a result of knowingly inducing fraud, and then transferred it in consideration for money that he pocketed himself. *Id*. at 465-66. The Bank did no such thing, receiving nothing from CP&A's clients as a result of representations made to them. The Trustee argues that the Bank partook of the fraud's benefits by "[keeping] a customer capable of making more than $130 million in deposits, more than $11,000 in overdraft, service, and wire charges, and more than $6 million in loan payments," but these are all benefits received by what the Bank believed were lawful transactions with a customer. Complaint at 20. If the rule were that banks are strictly as principals for *all* fraud perpetrated by customers because they indirectly benefit from things like overdraft fees and large deposits, regardless of whether they *actually knew* of such fraud, operating a bank would mean exposure to practically unlimited liability. "[T]o extend a duty of care to strangers . . . would be contrary to the normal understanding of the purpose of a bank account and would expose banks to unlimited liability for unforeseeable frauds." *Eisenberg v. Wachovia Bank*, 301 F.3d 220, 226 (4th Cir. 2002) (citation omitted); *see also Berman*, 455 F. App'x at 95 (holding that Know Your Customer requirements alone cannot make a bank strictly liable for fraud by customers because they would be "liable for aiding and

---

[8] The "willful blindness to the fraud" language in this case is dicta, not a holding. It is cited as something for which a knowing participation *could be* liable, but no subsequent cases reuse this language.

28

abetting fraud every time a fraudster used brokerage accounts in service of its fraud in a detectable manner. That is not the law.").

57.     The Trustee claims that "[n]umerous Texas courts have affirmed the *Pierce Doctrine*," Complaint at 27, but none of the cases cited in support of this claim cite, mention, or allude to *Pierce*. *See generally Five Star Transfer*, 339 S.W.2d 384 (containing no reference to *Pierce* or a "*Pierce Doctrine*"); *Corpus Christi Area Teachers Credit Union*, 814 S.W.2d 195 (same); *see In re Arthur Andersen LLP*, 121 S.W.3d 471 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (same). Nor do their holdings approximate the rule articulated by the Trustee because they address participation in the fraud *in concert with* or *in like manner* to the primary perpetrator, <u>not</u> unknowing or even reckless assistance of the fraud. All parties in these cases, *Pierce included*, knew that the fraud in question was being perpetrated by a third party.

58.     The Trustee's subsequently cited cases, *see* Complaint at 27 n.11, are also distinguishable in other ways. In *Five Star Transfer*, the question was whether the plaintiff could recover from the partner of a partnership who had directly lied to him, "represent[ing] that the corporation was in good financial condition and was only indebted for current bills, that the corporation had an I.C.C. permit, and that the corporation was the owner of a considerable amount of trucks, tractors, and trailers." *Five Star Transfer*, 339 S.W.2d at 385. The court's ruling that the partner could be recovered from was a matter of sidestepping the corporate fiction shielding him— a direct perpetrator and beneficiary of the fraud—from liability. *See id.* at 387. It is not applicable to the bank context here.

59.     *Corpus Christi Area Teachers Credit Union* concerned the president of a credit union who directly participated in the fraudulent sale of land to a Gene Allen Jones. *Corpus Christi Area Teachers Credit Union*, 814 S.W.2d at 198-99. The president made a loan to Jones for the

sale of the land on the basis of an obviously altered and unconscionable earnest money contract, the original form of which he had previously rejected. *Id*. at 199. The president in that case *knew* that Jones had formerly lied about the ownership of the land; *knew* that the $4,000 offered in the earnest money contract was plaintiffs' and not Jones's; *knew* that the plaintiffs were only receiving $4,000 for $28,000 worth of land; and *knew* that the plaintiffs had believed they were executing a contract for a loan and not the purchase of their own land by Jones. *Id.* at 199-200. The credit union was also eventually able to foreclose on the property. *Id*. at 200. *Corpus Christi*, where the president of the credit union stepped in to override bank procedures and execute agreements *knowingly defrauding specific plaintiffs* of their land and thereby directly benefiting from it, involved a level of knowing malfeasance not alleged by the Trustee here.

60.      The last case the Trustee cites, *In re Arthur Andersen*, states that "for the third parties to be liable for fraud, they need not have made representations directly to the Plaintiffs," but that case's discussion of the rule still presupposes a knowledge requirement. *See In re Arthur Andersen LLP*, 121 S.W.3d at 481. Such knowledge can come in the form of knowing participation in, knowing silent acquiescence to, or knowingly benefitting from the fraud, and the *In re Arthur Andersen* court did not countenance anything like the strict liability being advocated for by the Trustee. *Id*.

61.      In sum, the so-called *Pierce Doctrine* cited by the Trustee, to the extent that it does exist, is inapplicable to the current case. The beneficiary in *Pierce* knowingly had a direct hand in the fraud by the husband, and all subsequently cited cases concerned either direct, fraudulent representations to plaintiffs by third parties or the *knowing* malfeasance of financial institutions. To extend this doctrine and hold banks strictly liable for all fraud perpetrated with the assistance of their credit cards, bank accounts, or loan services, regardless of their knowledge, would expose

them to an unconscionable level of liability. The Trustee's recitations of fact, as currently pleaded, cannot be construed to allege the Bank's actual knowledge of Pettit's fraud. A plaintiff is obliged to provide "more than labels and conclusions," but the Trustee here has merely labeled the Bank as a *knowing* participant in, and beneficiary of, the fraud without substantiating the fact of knowledge. *Twombly*, 550 U.S. at 555. Because knowledge of the fraud is a requirement in the cases the Trustee cites in support of this cause of action, any pleadings in support thereof are unable to survive the scrutiny mandated by *Twombly*.

62.     In addition, the Trustee fails to meet the heightened pleading standard of Rule 9 for the allegations against the Bank, and also for the predicate fraud allegations against Pettit. To satisfy Rule 9, fraud claims must "state with particularity the circumstances constituting fraud." *Legendary Lightning*, 2015 WL 3942946 at *2 (citing *U.S. ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 186-189 (5th Cir.2009)) (internal quotations omitted). The particular allegations must include the time, place, and the specific contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained. *Id*. The Trustee fails to make specific statements about the Bank's alleged participation in Pettit's fraud and fails to allege any direct benefit to the Bank specifically related to the fraud. *See* Complaint at 25-29.

63.     The Trustee also fails to plead sufficient facts to meet the heightened standard of Rule 9(b) with respect to his fraud claim against Pettit individually, which is a predicate for the knowing participation in fraud claim. The Complaint simply states that "[f]rom 2017 to 2021, Pettit defrauded CP&A and CP&A Clients" followed by a recitation of the elements of a fraud claim and allegations (once again "upon information and belief") of generic misrepresentations that the Trustee asserts without evidence were made to CP&A and CP&A clients "each time Pettit gained a new CP&A Client." Complaint at 25-27.

64.     These statements "fall far short of the 'who, what, when, where, and how' required under 9(b)." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 868 (5th Cir. 2003); *Legendary Lightning*, 2015 WL 3942946 at *5. And as with the Trustee's other attempts to shield claims from dismissal through the use of "upon information and belief," the general availability of that phrase is not a "license to base claims of fraud on speculation and conclusory allegations." *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1068 (5th Cir. 1994).

65.     Moreover, as stated above, the Trustee's fraud claim against Pettit by and on behalf of CP&A is precluded as a matter of law because claims for fraud and misrepresentation "cannot stand when the party asserting the claim is legally charged with knowledge of the true facts. *Shindler v. Mid-Continent Life Ins. Co.*, 768 S.W.2d 331, 334–35 (Tex. App.—Houston [14th Dist.] 1989, no writ) (citing *Sutton v. Grogan Supply Co., Lumber Div.,* 477 S.W.2d 930, 935 (Tex. Civ. App.—Texarkana 1972, no writ) ("[T]he person who claims he has been defrauded must not be in possession of information showing the utter falsity of the alleged misrepresentation.")). And as this Court clearly stated during the January 24, 2024 hearing on Wells Fargo's motion to dismiss identical claims in *Verstuyft*, "Chris Pettit is Chris Pettit and Associates. There is no one else. There may have been other people that worked there. There may have been other lawyers that worked there. But at the end of the day, Chris Pettit controlled Chris Pettit and Associates." Exhibit B, January 24, 2024 Rulings of Court, 34. The Trustee's fraud claim, asserted on behalf of CP&A, therefore fails.

66.     For the many reasons stated above, the Complaint fails to allege facts sufficient to state a claim for relief for knowing participation in a fraud, and this cause of action should be dismissed under Rule 12(b)(6).

### iii.    The Claims for Negligence and Gross Negligence Must Be Dismissed

67.    The Trustee alleges negligence and gross negligence against the Bank in Count V of the Complaint, specifically that the Bank was negligent in allowing "the IOLTA accounts and other accounts to be operated in a manner that bore no reasonable resemblance to the how such accounts are required or operated to be used." Complaint at 29-30. The allegation of negligence on behalf of CP&A, as a client of the Bank, fails because there was no duty for the Bank to supervise Pettit's operation of the accounts. The negligence claim also fails because, as stated above, the UCC preempts any such claims, CP&A had a contractual agreement with the Bank delineating the scope of all duties owed by the Bank, and because tort claims for purely economic losses are barred by Texas law. Finally, the negligence claim asserted by the Trustee about the management of the accounts also fails because Pettit, and therefore CP&A, was operating those accounts.

68.    The Trustee's allegations of a duty and breach of duty to "CP&A Clients" must be dismissed because the Bank does not owe a duty to the CP&A Clients as a matter of law.[9] "To maintain a negligence claim, a plaintiff must establish a duty owed to it by the defendant." *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.). "Generally," however, "a bank owes no duty to someone who is not a customer and with whom the bank does not have a relationship." *Id*. *Owens* concerned a fraudster who opened two accounts with a bank, deposited fraudulently obtained money in those accounts, misrepresented the accounts' purpose to the bank, and then misappropriated those funds for his own use. *See id*. The non-customer plaintiffs' sued the bank for negligence in allowing the fraudster to use his accounts in such a way, alleging that by way of "industry standards," the bank owed plaintiffs a duty of care. *Id*. at 547. The trial court

---

[9] As previously discussed, the Trustee does not have standing to bring these claims.

granted the bank summary judgment on the claim and the court of appeals affirmed on the grounds

that the Comerica "owed no duty to the Owens family as a matter of law." *Id*. Subsequent decisions

have affirmed this principle. *See Taya Agric. Feed Mill Co. v. Byishimo*, No. CV H-21-3088, 2022

WL 103557, at *4,5 (S.D. Tex. Jan. 11, 2022) (granting bank's motion to dismiss plaintiff's

negligence claim regarding bank's acceptance of fraudulent documents); *Red Rock v. Jafco, Ltd.*,

79 F.3d 1146, 1996 WL 97549, at *4 (5th Cir.1996) (unpublished opinion) ("A bank, however,

owes no legal duty of care to investigate or disclose its customers' conduct or intent to third parties

with whom the bank's customers do business."); *Abry v. Vanguard Grp. Inc.*, No. 4:20-CV-02756,

2021 WL 6197304, at *4 (S.D. Tex. Dec. 31, 2021) ("A financial institution thus typically owes

no duty to 'someone who is not a customer and with whom the bank does not have a relationship.'"

(citing *Owens*, 229 SW3d at 547). Accordingly, the Bank owed no duty to the CP&A Clients with

whom it had no contract or relationship, and it therefore cannot have been negligent in violating

any such duty. The Trustee does not state valid theories of negligence against the Bank on behalf

of CP&A or the CP&A Clients. The Bank did not owe a duty of care to the CP&A Clients, and

CP&A's direct assertion of negligence against the Bank as its customer fails under Texas's

economic loss rule and other theories stated.

69. The cause of action for gross negligence must be dismissed because the Trustee

fails to plead sufficient facts to support that claim. Texas law has a high standard for establishing

gross negligence, which at the outset requires pleading two baseline elements. "First, viewed

objectively from the actor's standpoint, the act or omission complained of must depart from the

ordinary standard of care to such an extent that it creates an extreme degree of risk of harming

others." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008); *see*

*also* Tex. Civ. Prac. & Rem. Code § 41.001(11)(A). "'Extreme risk' is not 'a remote possibility of

injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff.'" *Id.* "[T]he risk must be examined prospectively from the perspective of the actor, not in hindsight." *Id.* "Second, the actor must have actual, subjective awareness of the risk involved and choose to proceed in conscious indifference to the rights, safety, or welfare of others." *Id.* The Texas Supreme Court has repeatedly emphasized that "what separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005). Conduct that is "merely thoughtless, careless, or not inordinately risky" is not grossly negligent. *Ardoin v. Anheuser-Busch, Inc.*, 267 S.W.3d 498, 503 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

70.     Gross negligence involves more culpable conduct than ordinary negligence. It involves both objective and subjective elements. *See Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 325-26 (Tex. 1993). Objectively, the defendant's conduct must involve an extreme risk of harm, a threshold significantly higher than the "objective reasonable person" test for negligence. *See id.* at 326. Subjectively, the defendant must have actual awareness not just of risk, but of an "extreme risk" created by the conduct. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137-38 (Tex. 2012). "[A] party cannot be liable for gross negligence when it actually and subjectively believes that circumstances pose no risk to the injured party, even if they are wrong." *Id.* at 141. In reviewing this prong, courts "focus on the defendant's state of mind, examining whether the defendant knew about the peril caused by his conduct but acted in a way that demonstrates he did not care about the consequences to others." *Reeder v. Wood Cnty. Energy, LLC*, 395 S.W.3d 789, 796 (Tex. 2012).

71.     Here, the Trustee has not alleged sufficient facts to even infer that the Bank

committed an act of gross negligence that proximately caused damages to the debtors or estate. Specifically, there is no evidence of any act or omission by the Bank that, when viewed objectively from the Bank's standpoint, involved an extreme degree of risk. And just as the Trustee has failed to present any facts capable of demonstrating the Bank had actual knowledge of Pettit's wrongdoing generally, he has similarly failed in the context of gross negligence to provide any factual support for the required element that the Bank possessed actual subjective awareness of an extreme degree of risk but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

72.     In sum, the Trustee has not pleaded sufficient facts to support either the objective or the subjective prongs of gross negligence, or facts supporting conscious indifference. Instead, the Trustee offers the same sort of conclusory allegations relied upon in other areas of the Complaint, namely that the Bank "had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." Complaint at 30. Once again, this allegation is nothing more than a recitation of elements and is incapable of satisfying even the minimal pleading standard required by *Twombly* and its progeny. The Trustee's gross negligence claim against the bank should therefore be dismissed alongside the other insufficiently pleaded common law claims accordingly.

## II.     The Fraudulent Transfer Claims Must Be Dismissed

### A.     Trustee Fails to Plead that Transfers Involved Debtor Property

73.     The Trustee seeks avoidance of the loan payments made by Pettit to the Bank, arguing that they can be properly avoided pursuant to §§ 548(a)(1)(A), 548(a)(1)(B), and 550(a)(1)-(2) of the Bankruptcy Code, as well as the Texas Uniform Fraudulent Transfer Act ("TUFTA"). These sections provide a way for a creditor to avoid the payment of any fraudulent

transfer of interest in property by, or obligations fraudulently incurred by, the debtor. 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), 550(a)(1)-(2); Tex. Bus. & Com. Code §§ 24.005(a)(1)-(2), 24.006(a), 24.013. Both statutory schemes, state and federal, require that the debtor was insolvent on the date the transfers were made or, as a result of the transfers, would become insolvent. 11 U.S.C. § 548(a)(1)(B)(ii)(I); Tex. Bus. & Com. Code § 24.005. The Bankruptcy Code additionally requires that the debtor own the property so transferred. 11 U.S.C. § 548(a)(1). Finally, Section 548 also requires demonstrating that the debtor received "less than a reasonably equivalent value in exchange" in order to avoid the purportedly fraudulent transfer. 11 U.S.C. § 548(a)(1)(B). "Reasonably equivalent value means that the debtor has received value that is substantially comparable to the worth of the transferred property." *In re Jenkins*, 617 B.R. 91, 107 (Bankr. N.D. Tex. 2020) (quotations omitted).

74.     With respect to the Bankruptcy Code's ownership requirement, the Trustee fails to allege *any* facts to support the Debtors' ownership of the funds. *See generally* Complaint. Moreover, many of the loan payments complained of by the Trustee were made with funds from IOLTA accounts. Funds from an IOLTA account may or may not belong to the client at the time of the transfer, and the Trustee has not pleaded sufficient facts to show that Pettit had a cognizable property interest in them at the time of the transfer. *See id*., at 31-32. "To successfully maintain an action under Section 548, the movant must show that the debtor had an existing interest in the property at the time of its transfer. . . . Although the Bankruptcy Code does not define 'interest of the debtor in property,' the term as used in §§ 547 and 548 is limited to the debtor's pre-petition property that, but for the transfer, would have become 'property of the estate' under 11 U.S.C. Section 541." *In re Griddy Energy LLC*, No. 21-30923, 2022 WL 6795069, at *2-3 (Bankr. S.D. Tex. Oct. 6, 2022); *see also In re Hoffman*, 955 F.3d 440, 443-44 (5th Cir. 2020) (affirming

dismissal of fraudulent transfer claim where debtor "was divested of ownership" of property before transferring). In this case, the Trustee has the burden of pleading and proving that the funds transferred to the Bank as loan payments were property of the Debtors. *In re Philip Servs. Corp.*, 359 B.R. 616, 625 (Bankr. S.D. Tex. 2006) As the Complaint does not include any such allegations, the Bankruptcy Code claims as to the IOLTA accounts are null.

### B.    Trustee Fails to Allege Facts to Support Insolvency

75.    The Trustee also fails to allege facts to support the insolvency element of its claims. Regarding the insolvency requirement in both statutes, the Trustee alleges no facts demonstrating Pettit's insolvency at the time the loan payments were made. *See* Complaint at 31-32. Pettit made loan payments to the Bank from 2018 through 2021, with the final payment being made on May 5, 2021, but the Trustee's allegations of insolvency at that time are conclusory. The Trustee claims the following:

a.    "CP&A was insolvent at all times during which the Fraudulent Transfers were made." Complaint at 21;

b.    "The Debtors were insolvent at the time the Loan Payments were transferred to [the Bank]." *Id*. at 31; and

c.    "The Debtors transferred the Loan Payments to [the Bank] for less than reasonably equivalent value, which transfers were made when the Debtors were insolvent, or the transfers rendered it insolvent." *Id*. at 32.

76.    No figures, bankruptcy proceedings, or other direct evidence are cited for these assertions. *See id*. at 31-32. The reader is meant to fill in, i.e., *speculate as to*, the fact of insolvency. The occurrence of overdraft fees cited in support of the first claim on page 21 of the Complaint are insufficient, as they only prove that specific accounts did not have sufficient funds to cover

certain transactions; they are not evidence of the entire estate's insolvency. Pettit's bankruptcy proceedings did not begin until June 1, 2022, more than a year after the final loan payment was made to the Bank. *See In re Chris Pettit & Assocs., P.C.*, No. 22-50591-CAG, 2022 WL 17722853, at *2 (Bankr. W.D. Tex. Dec. 13, 2022). While such conclusions "can provide the complaint's framework," they "are not entitled to the assumption of truth" and must be supported by factual allegations. *Id.* at 664. The facts recited in the Complaint may make the fact of insolvency *conceivable*, in that one could conceive of Pettit's irregular banking habits were a result of concealed insolvency, but the facts must make the insolvency *plausible* and not merely speculative. *See Twombly*, 550 U.S. at 570. The Bank is therefore entitled to a Rule 12(b)(6) dismissal of the Trustee's fraudulent transfer claims, which are deficient in material facts needed to plead the causes of action asserted.

### C.  Trustee Fails to Plead Facts Showing Lack of Reasonably Equivalent Value

77.   The same is true of the Trustee's claims under § 548(a)(1)(B), which requires a predicate showing that the debtor "received less than a reasonably equivalent value in exchange for such transfer." *Id*. Here, again, the Trustee simply makes the conclusory assertion that "[t]he Debtors did not receive reasonably equivalent value for the transfers" without any sort of supporting facts regarding the value of the transfers at issue, the value received in exchange for the transfers, or—most critically—why that value was not reasonably equivalent. *See* Complaint at 31. These are precisely the sort of conclusory allegations, legal conclusions, and recitation of elements that the Supreme Court unequivocally held are not entitled to the presumption of truth. Further, bankruptcy courts have repeatedly held that "when a transfer is made to pay an antecedent debt, the transfer may not be set aside as constructively fraudulent" under Section 548. *In re Jones*, No. 16-41283-ELM-7, 2019 WL 1167812, at *8 (Bankr. N.D. Tex. Mar. 11, 2019) (quoting

*Walker v. Pasteur (In re Aphton Corp.)*, 423 B.R. 76, 89 (Bankr. D. Del. 2010)). As the Fifth Circuit explained, "[w]hen a debtor makes a payment on antecedent debt and receives a dollar-for-dollar reduction of that debt … the question is easy because the debtor by definition receives reasonably equivalent value—indeed, *exactly* equivalent value, assuming, of course that the debt itself was based upon value." *Matter of La. Pellets, Inc.*, 838 F. App'x. 45, 50 (5th Cir. 2020) (citing *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 766–67 (Bankr. W.D. La. 2013) (collecting cases)). The Bank is therefore entitled to a Rule 12(b)(6) dismissal of the Trustee's fraudulent transfer claims under the state and federal statutes because they are deficient in the sort of material facts needed to sufficiently plead the causes of action asserted.

## CONCLUSION

78.     The Trustee's Complaint against the Bank in this case is a morass of legally and factually impermissible claims. The Trustee lacks the requisite standing to bring the common law causes of action, which are in turn also definitively barred by this Court's prior rulings under the law of the case doctrine, the Uniform Commercial Code, the Account Agreement executed between Debtors and the Bank, the economic loss rule, and the absence of sufficient factual allegations to satisfy the federal pleading standard. The Trustee's state and federal fraudulent transfer claims—the only causes of action he has standing to pursue—also require dismissal because the corresponding portions of the Complaint are devoid of even minimal supporting facts necessary to state a cognizable claim for relief under those statutes, and instead exemplify the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [that] do not suffice" to survive dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. As such, the Complaint against the Bank in this action should be dismissed.